May it please the Court, Scott Mossman for the petitioner, Daniel Cachay, I'd like to reserve three minutes. After the first oral argument, I wanted to find something that I could say that was right, something that was correct. There is something in the board's decision that's absolutely true, and it supports our argument that it exceeded the scope of the remand. And so I want to point that out. We're saying that it exceeded the scope of the remand by addressing credibility. And the board justified that by saying it was a threshold issue. Quote, it affects all of the issues in this case, including those raised by the Ninth Circuit. But that's precisely why they exceeded the scope of the remand. Credibility is a threshold issue. And for that reason, it was necessarily decided by the first board member who looked at the case ten years ago. It was the primary issue. Credibility was argued by both sides, and the board member who first heard it sided with my client. He chose not to. Well, they didn't address that. So your argument appears to be that the BIA has to make credibility findings in every case if it finds other issues dispositive. And just because they decide, okay, this is an easier way for us to decide it, that assuming the prior Ninth Circuit panel presumed the BIA found the Petitioner credible, what authority supports your proposition that the BIA was bound by that presumption on remand? Well, Your Honor, they certainly can decide it on another issue. But if they want to do that and reserve the issue of credibility, they have to say they reserve the issue of credibility. But what's your best case for that? Brianna is, Your Honor. I mean, Brianna is the unbonked decision decided five years before the board decided this case the first time around. And the Ninth Circuit said we will only remand if they reserve credibility. And in that case, they did reserve credibility. And they cited all the cases before that where the Ninth Circuit, you know, if they don't make an adverse credibility finding and they don't reserve the issue, then it's assumed. And the Ninth Circuit doesn't remand. They don't say if the first panel had said we agree. But normally a remand is not limited unless we say it's limited, and it wasn't said to be limited here. Well, Your Honor, I think under the case we cited in our briefs, Mendez, where you specify issues to be decided by the board, then that limits the scope of the remand. And in this case, the first panel did specify two issues. The board clearly understood those were the issues specified. They, right in their decision, they said the Ninth Circuit remanded these two issues. And so it clearly understood what the scope of the remand was. And my understanding is the same as Judge Callahan's, which is that unless there's an express prohibition by a panel on remand that there's no bar to considering new evidence. Sometimes we say it's on an open record. They didn't do that here, obviously. Do you have a case or cases that expressly state that if one of our panels sends something back to the BIA that it can only consider within the four walls of what that panel said, unless there's language that requires that? Okay. I guess I would like to kind of make a distinction, Your Honor. Clearly, under the Supreme Court's decision in Ventura, the board gets first chance at any issue that it didn't decide before. That's clear. And in that case, it was changed country conditions, which is something that comes after a finding of nexus and past persecution. So clearly, they could address that. But in asylum cases, credibility always comes first. You always have to be credible, or otherwise the claim's just worthless. No, but they don't have to. But when there's multiple reasons given to the BIA, it's, you know, when you look at these cases all the time, sometimes they resolve it on something different than what the IJ did. And I'm kind of looking at this is not a published case, but an unpublished case in the Ninth Circuit, the Singh v. Holder, 533, the Fed Appendix 712. In that case, we said we didn't expressly limit the scope of the remand to exclude consideration of certain things. And the Court did just what you're saying we can't do here. So they didn't think there was Ninth Circuit precedent. Okay. I'm not familiar with that unpublished decision, Your Honor. It was decided by Judges Wallace, Noonan, and Thomas in a memorandum decision. And you can't, you never can say how something's going to turn out, but that's a pretty immigration-friendly panel.  I understand, Your Honor. Why don't we, since we don't have a lot of time, why don't we just assume for a moment that there was leave to consider credibility. Can you address the issue of whether substantial evidence supports the credibility determination here? In other words, if we get to the merits of that issue? Well, Your Honor, I think that it would be wrong to get to the merits of that issue because the board only heard from one side below. Okay. There's that word wrong again. Okay. You don't want us to get to it. Please. But the judge just asked you to get to it. Yes, I understand that. Okay. So if you lose on the first issue, don't you want to say something on the adverse credibility? I certainly do, Your Honor. And the most important thing about the credibility is the board didn't understand that he had corrected all of his testimony before the court hearing even began. And one thing I'd like to point out is the board appears to not even understand  Well, okay. When you say he corrected everything, does that then prevent a trier of fact from looking at inconsistencies and deciding whether it really is something that was inadvertent or it was a flat-out lie? It doesn't prevent it, Your Honor. I mean, just because you can't, you know, you can't just completely erase the past when you're correcting things. That's correct, Your Honor. But I think the board had an obligation to address the fact that it was corrected beforehand. And by exceeding the scope of the remand, they, you know, they didn't even hear from our side below. And they had to at least grapple with the fact, address the fact that he came forward before the court hearing and corrected these things voluntarily. He wasn't caught in an inconsistency. No. If the Petitioner, his testimony, if he knew that the former counsel's secretary put false information on his application before he signed it, why can't the BIA and the IJ find that the inconsistent entry date supported an adverse credibility finding? Your Honor, I think that would be a close call. But they didn't address the fact that he had corrected it before the court hearing. He did admit that he lied, did he not? He did admit that he didn't tell the correct. He lied. The big problem, though, is in the board's decision, it said that he lied on several occasions under oath. But that actually wasn't correct. That was due to a misrepresentation in the government's brief below. It said that, you know, it cited page 25 of the transcript in support of the allegation that he had lied under oath multiple times. Page 25 of the transcript refers to when he was swearing under oath to the corrected amended application, the one he filed in July, which was Exhibit 6. So the board misapprehended that. And it's understandable because the government's brief said that. But he had actually only not said the truth before the asylum officer. I get your point about the initial asylum application. But, for example, Ms. Armilla testified that he was moving to a different thing. The second attack occurred after she arrived in the U.S. in July of 1993 or 1994. Your client claimed it occurred in March of 1993. And the fact that she testified the second attack occurred after she entered in July of 1993 or 1994 raises a question about whether he is accurate in what he said. And it goes to the heart of his claim, of course, because it's a whole guerrilla issue that is the underlying basis of his claim, right? Sure, Your Honor. And the board did mention that in passing. But her testimony was she came in 1993 or 1994, and she wasn't clear on that. I think that testifying about something that was not clear was not clear. But either one of them, as I understood it, whatever, whichever of the two dates that you pick of what she said, she was here. She wasn't there. And he said what happened occurred, I believe, while she was there. So they're irreconcilable, are they not? Your Honor, I think that's the type of date discrepancy that's not a substantial basis for denying an asylum claim. I mean, she was testifying about when she came 10 years before. And, you know, there probably was some way of verifying that. But wasn't something about the difference in the date that it would be better for you to put one date as opposed to the other? I'm sorry. Wasn't there some back story about we're going to put this date because it would be better for you even though that isn't? Oh, I believe that, Your Honor, I believe that's referring to when he came to the United States. I understood the judge's question about when Ms. or the sister came. Right. So I just wanted to go back to the fact that, you know, he did not swear to the truth of the original application before the immigration judge. He corrected everything before there was any cross-examination or before it was placed under oath at the hearing, and the Board misapprehended that by making it clear that he was not making it sound like he lied several times under oath. And the proof of that is the citation of the transcript at page 25. Would you like to reserve the balance so you can hear what the government has to say? Yes, Your Honor. All right. Thank you. You're back. I'm back. Good morning. State your name again for this case. Jane Shoffner for the respondent. Thank you. The Board did not err when, on remand from this Court, it examined Petitioner's credibility. Wasn't the remand limited to two discreet issues? The Court asked the Board to consider two issues, but nowhere in the question wasn't what we asked them to do. It says we remand through the BIA to consider whether, and they list two issues. That's correct. Particular social group and internal relocation. Right. But nowhere says those are the only two issues. Well, what's the difference between that and Menendez-Guterres v. Ashcroft, where I read the remand order in that case in a much simpler way. It said, accordingly, we grant the petition and remand to the BIA for reconsideration of whether Menendez-Guterres had established a prima facie case of eligibility for asylum. The Board didn't consider that. It considered something else. And when the case got back to us in 444 F. 3rd, 1168, we said the Board couldn't do that. The key difference is we have repeatedly held, we said, in both civil and criminal cases, that a district court is limited by this Court's remand in situations where the scope of the remand is clear. Now, I read you what the remand was. The scope of the remand was as clear there as it is here. And the Court went on, we went on to indicate a standard that's subtly different. It said, there's nothing in our prior decision that indicates we issued an open remand. So the only thing, I don't see any difference between the remand in Menendez-Guterres and the remand in this case that would suggest that the Board was free to go beyond the scope of the remand. In attempting to address the issues that the Court sent back to the Board, the particular social group and the internal relocation, the Board found that it couldn't address those issues without taking another look at the credibility. In order to provide an answer to this Court's question. Sotomayor, a different BIA judge, right? Yes. The particular social group claim and the internal relocation claim that this Court asked the Board to consider on remand were affected by a significant passage of time. The Board issued its first decision in this case in December of 2004. It got it back from the Ninth Circuit in 1990. I'm sorry. Sorry. A significant passage of time. And so in order to determine whether internal relocation, one of the two issues it was tasked with assessing, the Board could not have issued a decision based on the factual record before it. It would have needed to remand to the IJ for further fact-finding regarding whether there were changed country conditions for an analysis of the age, the health, the social, the family ties, the conditions in the country, and petitioner's own individual circumstances. Rather than remand to the immigration judge for further fact-finding to answer the questions about internal relocation and particular social group, the Board determined that remand, effectively determined that remand would be futile because the alien failed to provide credible testimony. And it was perfectly reasonable for the Board, as a matter of administrative efficiency, to simply decide that credibility was dispositive. Do you have any cases that say that? Yes. The Supreme Court held in INS v. Bagamasbad that courts and agencies need not address issues that are unnecessary to the results they reach. Say that again? INS v. Bagamasbad. Give me the second name again, please. B-A-G-A-M-A-S-B-A-D. The site is 429 U.S. 24. That doesn't really go to the remand issue. It goes to how they can approach something initially, correct? It does, but it stands for the overall principle that courts and agencies can decide an issue solely, can find one issue dispositive. It need not reach. But that's not the question I asked. What I'm interested in is do you have any cases that say that if a matter has been remanded to the BIA and it's specific about the remand, but the BIA determines that in order to make the decision asked by, in this case, our court, it needs to consider other matters not expressly referred to in the remand, that that's okay. Do you have any cases to that effect? I don't have a specific case that goes directly to that issue. The best I can do is Vermont Yankee that says that the agency should be free to fashion  You would concede, I'm assuming, however, that if the court says, if the Ninth Circuit remands and says this is all you can look at, you can look at nothing else, that is that would be a remand, a limited remand? Yes. We would concede if there had been language that said this and only this, absolutely the board would have gone beyond the scope. But the court didn't say that in this case. And as I said before, in order to reach the issues that it was tasked with deciding, it would have needed to remand to the immigration judge for further factual findings. There were simply not sufficient factual findings in the record to address whether internal relocation so many years later was a viable option. Given the developments in the case law regarding particular social group, regarding social visibility and particularity, developments that occurred after it issued its decision in this case, it would have had to send that back. And so the board simply determined that it would have been futile to do so given the numerous inconsistencies that went to the heart of Petitioner's claim. If the prior panel had reached adverse credibility, let's say it had double-barreled it, reached adverse credibility and the merits, and then the remand happened to reconsider the relocation and all of that, would the BIA have been free to revisit adverse credibility if that had occurred, if they had reached it in the first instance? No. If the Ninth Circuit had reversed the agency's adverse credibility determination, the board would have been bound by that decision. But the board didn't speak to adverse credibility in its first decision. The Ninth Circuit didn't speak to adverse credibility in its decision. Adverse credibility just was simply a silo. It was simply assumed. Well, this Court may have assumed that Petitioner was credible, but that doesn't Because the BIA didn't suggest otherwise. The BIA just simply didn't say anything about credibility in its original decision. And opposing counsel cites Briones, and we would argue that he overstates the court's holding in Briones. In Briones, the court said where the board expressly declines to discuss credibility, this court will remand for the board to make that credibility determination in the first instance. And in a footnote, they say that where there are multiple issues, as there were in this case, both on credibility grounds and a particular social group and internal relocation, Briones urged the court or rather urged the board to consider addressing credibility rather than bypassing it as it did here and to state its conclusions in the alternative. But the board is not required to do that. It might be a good practice, but that's not what they're required to do. Was any new evidence regarding credibility entertained by the BIA or the same evidence that was originally entertained before the IJ? It was the same evidence that was before the IJ and the board. And with regard to counsel's argument that he didn't have an opportunity to address credibility on remand, that's simply not the case, that both parties were provided an opportunity to submit briefs on remand. The government asked the board to take another look at credibility. There was a simultaneous briefing schedule. Both parties submitted their briefs on the same day. Upon receipt of the government's brief where the government argued that the board should take another look at credibility, Petitioner had an opportunity to file a reply brief. He could have made arguments about credibility at that time, but he failed to do so. The board looked at the arguments that were made when the case was last before them, the arguments that basically attribute the inconsistencies in this case to previous counsel's secretary. But that explanation is not adequate to explain why Petitioner and his sister provided different testimony regarding whether Petitioner was persecuted by the Shining Path or the MRTA. The deficiencies with his previous counsel don't explain the discrepancies in his testimony regarding when and where his family went after the second attack, whether they left the area two days later, two weeks later, whether they left the area immediately. They also don't adequately address why there's discrepant testimony regarding that. Can I ask you, did they address the issues that we remanded them to consider? They addressed the issues by saying they didn't have enough information to issue a decision. They acknowledged the issues and simply said we don't have enough here on this factual record. And so what did they do as a consequence of not having? I mean, if I understand your argument, you said they had to make credibility findings in order to reach these issues that we remanded on. I'm just trying to do a shorthand of what I think you argued. It sounds plausible to me, but it's not plausible if they actually never reached those two issues. What I'm saying is in order to reach those two issues, they would have needed to remand to the immigration judge for additional fact-finding regarding country conditions, regarding the factors that go into a particular social group determination. They didn't need to do additional fact-finding with regard to credibility, and, in fact, the Board has proven that. No, so that they never in fact reached the two issues that we remanded on. They did not issue a decision on those two issues. They said that they were unable to. Regardless of whatever finding they made on credibility, they didn't say, because of the finding we made on credibility, we now answer the two questions on remand. And they wouldn't have been able to. So then the answer is that they should have just remanded to the I.J. if it was a limited remand from us. But our position is that it wasn't a limited remand. There's no way that I can see that you could distinguish the order of remand in Mendez-Guterres and the subsequent reversal of the BIA, both in published opinions, by the way, both containing remands that are identical in form. And in Mendez-Guterres, when it came up the second time, we said, you just, you ignored, you ignored the limited nature of our remand. The factual circumstances giving rise to the Mendez decision are important. In Mendez, the issue was raised for the first time on remand. It was a brand-new issue. Yeah, the difference is that in one instance, in Menendez versus, you know, this may sound cynical, but in Mendez versus Ashcroft, they said the alien couldn't go beyond the scope of the remand. And in this case, they said the government could. And that's what you tried to do. In other words, it wasn't what was different about these two cases, in my own cynical view, is that it was the government who was going beyond the scope of the remand here. And in Mendez, it was the alien who was. And in Mendez, they said the alien couldn't go beyond the scope. And here, the government went beyond the scope. That's one factual difference. But the difference is the alien raised an argument for the very first time that he had never raised before, whereas the issue of credibility had been raised at all times during the proceedings and had been fully briefed and fully – it wasn't a surprise issue that had never been considered. It wasn't fully briefed. He didn't file it. You said there was simultaneous briefing. He didn't brief the issue of credibility, presumably because, I assume, because he was relying on the nature of the remand. And when the government filed its brief where it asked the board to reconsider credibility, Petitioner had an opportunity to file a reply brief answering those arguments about credibility, but he failed to do so. All right. We've used your time, so that will conclude your argument. Thank you. If there are no further questions by the panel, there do not appear to be. Thank you. Thank you. I'd just like to correct one misstatement. Counsel said that there was an opportunity to file a reply brief. That's not correct. Under the board's practice manual, Chapter 4.6H, they do not accept reply briefs. It has to be – you have to file a special motion requesting that they exercise their But, of course, you're correct. Our position was that the remand was limited, the issues remanded. So that's what we briefed, and that's what we consider important. About the argument that there was insufficient evidence. The first board member didn't think that there was insufficient evidence. The first board member decided on nexus and changed country conditions and assumed the credibility, and by not reserving credibility, it just took it off the table. I'd like – the counsel pointed to the Brionas footnote, footnote 1. The important thing to know about Brionas is that in Brionas, they did expressly reserve credibility. In this case, they didn't. And what Brionas says is the remedy under circumstances where the board has And then it goes on to say, this is not a case where the board was silent on the credibility issue or must have reached its decision on the assumption it was truthful. This is a case where the board actually found that he was not credible and reserved the issue. That's all I had to say. Well, it's okay. You don't have to use all your time if there's no further questions. This matter will stand submitted.
judges: Korman, Callahan, Smith